## THE CASCADES.

### THE LURLINE.

(Circuit Court of Appeals, Ninth Circuit. October 2, 1911.)

#### No. 1,885.

COLLISION (§ 100*)—STEAM VESSELS MEETING IN FOG—MUTUAL FAULTS.

A collision on the Columbia river at night in a fog between the steamer Cascades, passing down from Portland, and the steamer Lurline, passing up, *held* due to the fault of both vessels; the Cascades being in fault for being out of her course and on the wrong side of the river, in violation of article 25 of the inland navigation rules (Act June 7, 1897, c. 4, 30 Stat. 101 [U. S. Comp. St. 1901, p. 2883]), requiring steam vessels in narrow channels to keep to that side of the fairway which lies on their starboard side, whereas she was heading across the river, and the collision occurred within 250 feet of the Oregon shore, and both vessels being in fault for running at full speed until nearly the time of collision, although each heard the fog signals of the other, in violation of article 16 of such rules.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 213–215; Dec. Dig. § 100.*

Collision rules, speed of steamers in fog, see note to The Niagara, 28 C. C. A. 532.]

Appeal from the District Court of the United States for the District of Oregon.

Suit in admiralty for collision by the Vancouver Transportation Company, owner of the steamer Lurline, against the steamer Cascades, the North Pacific Lumber Company, claimant, and cross-libel against libelant. Decree (178 Fed. 726) against both vessels, and both claimants appeal. Affirmed.

Thomas N. Strong, for appellants.

W. W. Cotton and Dolph, Mallory, Simon & Gearin, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. These are cross-appeals. The case shows that in the early morning of November 26, 1906, a collision occurred during a fog on the Columbia river, between the stern-wheel steamers Lurline, owned by the Vancouver Transportation Company, and Cascades, owned by the North Pacific Lumber Company, resulting in the sinking of the Lurline and a slight injury to the Cascades. By its libel the owner of the Lurline sought to recover from the Cascades $11,-791.16, as alleged damages, and by cross-libel the owner of the Cascades sought to recover from the Lurline $589.45, its alleged damages. After trial the court below found both boats in fault, and divided the damages, giving judgment against the Cascades and her sureties in favor of the owner of the Lurline for $4,811.15. We have examined the record with care, and are of the opinion that the judgment should be affirmed.

The evidence shows that the Cascades left Portland shortly after 12 o'clock of the night in question for points down the river, and that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the Lurline was making her regular nightly run from Astoria to Portland. It shows, further, that the regular course of the passenger boats running upstream was near shore and parallel thereto, and for those going down further instream. The point of collision was near Rainier, which is on the Oregon side of the river. The Lurline usually stopped at that place for passengers, and always ran within hailing distance of it in order to stop there if occasion demanded. Cowlitz is a stopping point a short distance below Rainier. Blanchard's dock is about 950 feet above, and about 1,400 feet above that dock is Smith's Mill. The pilot of the Lurline testified that, when he reached Cowlitz, there was a slight haze on the water, but not sufficient to make it necessary to sound his fog signal; that at that point the Lurline was put on her course for Rainier and proceeded to within about 200 feet of the landing place, and, not having been hailed from the shore, proceeded upstream, running parallel with the shore, and that at the lower end of Blanchard's dock she was put on her regular course, east half south, past Smith's mill; that he continued on that course up the river parallel with the shore and from 200 to 250 feet therefrom, being able to see the lights at all the places mentioned; that, before reaching Rainier, he heard a steamboat above him blowing fog signals, and that he therefore blew his signals as he proceeded; that, after passing Blanchard's dock, he saw the masthead light of a steamer coming downstream well outside of his boat; that he kept his course, and, when he had nearly reached the lower end of Smith's mill, he again saw the light, then almost abreast of him, and then paid no further attention to it; that very shortly thereafter his lookout gave warning that a boat was running into the Lurline, seeing which he at once reversed his engines and backed, and as his headway was checked the Cascades struck the Lurline about amidships, causing her to sink.

The Lurline, according to her pilot's own testimony, was running at full speed up to the time the Cascades' colored lights were seen almost immediately before the collision, notwithstanding the latter's masthead light had been previously observed. The Cascades also, according to the testimony, was going downstream at her usual rate of speed of about 12 miles an hour, on her fog course, given by her pilot as south by west one-half, and which at the place in question would take his boat from about 600 to 800 feet from shore. That speed, according to the testimony of her pilot, was maintained until he had heard three or four signals from the other boat, when he stopped his engine and permitted his boat to drift; that, after drifting three or four minutes, he saw the red light of the Lurline across his starboard bow, whereupon he immediately reversed his engines, but before the Cascades could be stopped she came into collision with the Lurline. It is evident from the result that the pilot of the Lurline was in error in supposing when he first saw the masthead light of the Cascades that she was "well outside of his boat," and that when he again saw that light that the Cascades was "almost abreast of him." Equally evident it is from the result that the Cascades was far out of her proper course, for it is certain that in some way she got over to within about 250 feet of the Oregon shore and there collided with the Lurline,

which was pursuing her right course, although at an improper speed under the existing conditions. We think the court below was quite right in holding that the Lurline was in fault in the particular last indicated, and that the Cascades was in fault both in respect to excessive speed and in failing to keep her proper course. Article 16, Act Cong. June 7, 1897, c. 4, 30 Stat. 99 (U. S. Comp. St. 1901, p. 2880), which is applicable to the case, provides:

"Every vessel shall, in a fog, mist, falling snow, or heavy rainstorms, go at a moderate speed, having careful regard to the existing circumstances and conditions. A steam vessel hearing, apparently forward of her beam, the fog signal of a vessel the position of which is not ascertained shall, so far as the circumstances of the case admit, stop her engines, and then navigate with caution until danger of collision is over."

The judgment is affirmed.